[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 578 
This is an appeal from a conviction of robbery wherein the jury fixed punishment at twenty years imprisonment. The appellant's retained trial counsel was appointed to represent him on this appeal.
At approximately 12:30 on the morning of September 28, 1976, three males, the appellant, Kenneth Jackson, and Jim Dandy, entered the Seven-Eleven Store on Norman Bridge Road where Mr. Santiago Saez was working. They bought some beer, potato chips, dip and olives to the check-out counter. One of the individuals asked for a candy bar which was not on the shelf. Mr. Saez went to open a box to get the candy and as he was getting it out, Kenneth Jackson put a pistol to his head and told Mr. Saez to go to the back of the store and open the safe. Jackson and Saez headed to the safe, the other two individuals walked to the cash register. Mr. Saez positively identified the appellant as being one of these two men.
While Mr. Saez was in the back room he heard two of the men get the money from the register. After he convinced Jackson that he did not know the combination to the safe, Jackson made him go into the bathroom and demanded his money. Mr. Saez handed him a five dollar bill.
Saez remained in the bathroom no longer than one minute. When he came out the register was open and empty. Before the robbers came in there was about fifty-one dollars in the register. The only customers in the store left shortly after they entered the store.
The police were called and within twenty-five minutes after the store had been robbed, the Montgomery police had returned four individuals to the Seven-Eleven Store for identification. Saez positively identified the appellant and two others but was unable to identify the fourth individual.
 I
The appellant's first assignment of error is that the state failed to establish the corpus delicti of the charged crime of robbery. The basis of the appellant's contention is that Mr. Saez did not see the appellant or anyone actually take the money from the cash register.
The three essential elements of the crime of robbery are: (1) Felonious intent, (2) force or putting in fear as a means of effecting the intent, and (3) the taking or carrying away of the personal property of another from his person or in his presence, with all three elements concurring in point of time.Moore v. State, 57 Ala. App. 668, 331 So.2d 422 (1976); Johnsonv. State, 57 Ala. App. 470, 329 So.2d 160 (1976).
The testimony of Mr. Saez alone shows that the appellant entered the store with two men, that when they entered there was approximately fifty-one dollars in the cash register, that one of those men pulled a pistol on him and forced him into a back room and that while he was back there he heard the other two men take the money from the cash register.
 "So, I hear the register when the other two guys, they got the money from the register, . . ."
* * * * * * *Page 579 
 "(A)nd I know when I was at the safe one of the guys was getting the money from the register."
* * * * * *
 "I could see him standing there, and you could hear them raise and open it and get any change."
* * * * * *
 "I couldn't say exactly he (defendant) was the one that opened the register; I know it was one of the other two . . or both."
At this time the three robbers were the only individuals in the store. When Saez came out of the bathroom, no longer than one minute after the robbers had departed, the register was empty. Thus the state proved the three elements constituting the corpus delicti of robbery. This evidence was also sufficient to satisfy the third element of a taking from the person. Harrisv. State, 44 Ala. App. 449, 212 So.2d 695, cert. denied,282 Ala. 726, 212 So.2d 704 (1968).
 "A thing is in the presence of a person in respect to robbery if it is so within his reach, inspection, observation, or control that he could, if not overcome by violence or prevented by fear, retain his possession. Hence, property may be considered as taken from the victim's presence where it was taken from another room of the house, from a car parked outside, or from another building on the premises." 67 Am.Jur.2d 37 Robbery, § 12.
For this same proposition, see also: DeFranze v. State,46 Ala. App. 283, 241 So.2d 125 (1970); Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962).
The testimony of Mr. Saez directly and positively incriminates the appellant. However the appellant in his brief also states that there is no evidence that the appellant had any knowledge of the robbery. From the evidence presented this was a matter of fact for the jury. From the testimony the jury could infer that the appellant was a willing and active participant in the crime.
Additionally, the state, after proving the corpus delicti of the charged crime, properly introduced the confession of the appellant wherein he admitted his active role in taking the money from the cash register. The proof of the corpus delicti aided by the confession of the appellant was sufficient to satisfy the jury beyond a reasonable doubt as to the guilt of the accused. Coleman v. State, 57 Ala. App. 392, 328 So.2d 642
(1976).
 II
Secondly, the appellant contends that it was improper and reversible error for the trial court to allow the state in closing argument to argue that it could have introduced the money in evidence, the state having failed to introduce any money taken in the robbery into evidence.
 On this matter the record only discloses the following exchange:
 "MR. DRINKARD: (Defense Counsel) Please the Court, we object to talking about what the evidence could have been.
 "THE COURT: I think you have asked, you have opened that, and I will let him answer it.
 "MR. POOL: (District Attorney) We could have brought in all kinds of policemen who testified and brought in evidence here.
(MR. POOL CONTINUES CLOSING REBUTTAL ARGUMENT.)"
Initially we note that the objection of the appellant does not sufficiently disclose what was said by the District Attorney for this court to rule that the argument was improper. Flowersv. State, 269 Ala. 395, 113 So.2d 344 (1959); Neugent v. State, Ala.Cr.App., 340 So.2d 55, cert. denied, 340 So.2d 60 (1976). Since we are not informed of what the argument was by therecord, we cannot pass on the objection. Baker v. State, Ala.Cr.App., 338 So.2d 528 (1976).
Additionally, even if we assume that the state was arguing that it could have introduced the pistol and the money, such remarks were considered by the trial judge to have been made in response to a similar argument presented by the appellant. *Page 580 
Where the defendant in a prosecution for robbery argues the failure of the state to produce the money taken and the weapon used in the commission of the offense, the state has the right reply in kind. For example see Newell v. State, 16 Ala. App. 77,75 So. 625 (1917); Hanners v. State, 147 Ala. 27, 41 So. 973
(1906). For the purpose of determining whether the statement made in argument had been improper, the argument must be viewed in its context and in light of what had transpired, that is, in light of preceding argument of defense counsel, to which the prosecutor's argument was an answer. Washington v. State,259 Ala. 104, 65 So.2d 704 (1953).
 III
During the course of the trial in an effort to impeach and discredit the identification testimony of Mr. Saez, the appellant placed Attorney Collier Carlton on the witness stand. The substance of his testimony was that at the preliminary hearing in this case, Mr. Saez had been unable to positively identify the appellant as being one of the men in the store. On cross examination Mr. Saez had denied this inability to identify the appellant. On direct examination of Mr. Carlton, the state objected because the witness was testifying from notes. However the court allowed the witness to continue the use of the notes. On cross examination of Carlton the state sought to impeach him by showing the large number of hearings he had attended that day and since then.
On redirect the following exchange occurred:
 "Q. (Defense Counsel) Did you take, you were testifying from a memorandum there, on something that you had in your hand. What is that you had in your hand that you were referring to as you were answering those questions?
 "MR. POOL (District Attorney): Objection, Judge, it's a self-serving declaration by this witness.
"THE COURT: I sustain the objection.
"MR. DRINKARD (Defense Counsel): You may come down."
The appellant asserts that it was error for the trial court to refuse to allow the witness to describe what notes he was referring to when he testified on direct.
At the outset we note that the witness was not denied the opportunity to refresh his recollection from his notes; neither was an exception nor objection taken to the adverse ruling of the trial judge. On appeal the appellant complains that the witness should have been permitted to identify the notes as to their nature and the time when they were made.
A memorandum may be used to refresh the memory of a witness in two situations: (1) Where the witness is allowed to look at any writing which serves to arouse a present memory of a past experience (present recollection revived) and (2) where the witness fails to recall the events in question upon looking at a memorandum that was made soon after the occurrence (past recollection recorded).
In each case a proper foundation must be laid for the witness to be able to refresh his memory and certain principles must be followed. McElroy, The Law of Evidence In Alabama, § 116.01 at 279 to § 121.01 at 284; M. Walker, Witness' Use of Memoranda:Present Recollection Revived And Past Recollection Recorded, 6 Cumberland Law Review, 471 (1975); Acklen v. Hickman, 63 Ala. 494
(1879); Connell v. State, 294 Ala. 477, 318 So.2d 710
(1974).
Where the witness's memory is revived and he presently recollects the facts, the evidence is the testimony of the witness and not the writing which is used to stimulate his memory.
 "The witness must testify to the facts as he remembers them and may not read or show the writing to the jury or state what the writing says or shows." 98 C.J.S. Witnesses § 358, page 86. See also Hickman at 498.
Under present recollection revived the memorandum is used to refresh the memory and not necessarily for what it says. The witness is not even required to have made the writing. 1 McElroy, Law of Evidence *Page 581 
In Alabama § 116.02 (2) (2d ed. 1959); Connell, supra.
Under the doctrine of past recollection recorded a witness may testify to a transaction or event on the basis of a written record of his past recollection, although the writing does not refresh his memory and he has no independent recollection of the event or transaction. Under this rule the memorandum may be admitted into evidence as a substitute for the witness's oral testimony. Witness' Use of Memoranda, 476. However before the notes or record are admissible it must be shown (1) that the witness at one time personally knew the facts upon which he is being examined, and that the memorandum is a correct record of them; (2) that the record was made soon after the occurrence so that the facts were fresh in his mind; and (3) the original memorandum must be produced or its absence accounted for.Witness' Use of Memoranda, 475-476. Only after this predicate has been laid may the actual memorandum be introduced into evidence.
Here the appellant laid no predicate for the use of the memorandum. Therefore the action of the trial court in not allowing the witness to identify his source of information was not error but was within the sound discretion of the trial court. The evidence was the testimony of the witness and not what was contained in his notes.
 IV
Finally the appellant submits that the confession signed by the appellant should not have been admitted into evidence because the confession was involuntary. Specifically, the appellant alleges that the confession was obtained through "pressure, trickery and undeviating intent" and as a result of "fear, fatigue and undue influence".
From the record we find that the appellant was advised of his constitutional rights by Detective Billy Wayne Knighten at 3:35 A.M. which was approximately two and one half hours after the robbery. Detective Knighten read the appellant his rights from a standard Montgomery Police "rights form" card. Those rights are in compliance with Miranda v. Arizona, 384 U.S. 436,86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The appellant indicated that he understood these rights but refused to sign a waiver of rights form. The appellant stated that he did not want to make a statement.
Detective Knighten placed the appellant in an office which was located immediately behind his desk. Knighten then got another one of the four individuals (Herman Davis) that was in the car with the appellant, advised him of his rights and took his written statement.
After taking Davis' statement, Detective Knighten went back and brought the appellant to his desk. He told him what Davis had just stated to him and asked the appellant if he wanted to give a statement. The appellant then stated that he would answer questions. The appellant's statement was taken at 5:10 A.M., one hour and thirty-five minutes after the appellant had been advised of his rights and declined to make a statement. The appellant was not advised of his rights immediately before he made his statement.
During this one hour and thirty-five minute interval, the appellant was placed in a room by himself. No one coerced or threatened him in the presence of Detective Knighten. No promises, offers, or hopes or reward or leniency were made. Anyone going into the room where Knighten had placed the appellant would have to go by Detective Knighten. No one was seen going into the room although it is possible that someone could have when Knighten went to get some water or to the restroom. Knighten was not aware that anyone else questioned the appellant.
After the appellant gave the statement and Detective Knighten typed it, the appellant looked at the statement and signed it. The appellant had been in police custody for approximately five hours when the confession was given. After this evidence was adduced, the confession was admitted into evidence and read to the jury over the appellant's objection. *Page 582 
On the voir dire hearing to determine the admissibility of the confession the appellant did not testify nor present any evidence on his behalf.
The record fails to show that the confession should have been excluded on the totality of circumstances doctrine. Once the mandate of Miranda has been complied with at the threshold of the questioning it is not necessary to repeat the warnings at the beginning of each successive interview. Here, the length of time and the events which occurred between the interrogations do not dictate that the warnings should have been repeated.Jones v. State, 47 Ala. App. 568, 258 So.2d 910 (1972); McBee v.State, 50 Ala. App. 622, 282 So.2d 62 (1973); Allen v. State,53 Ala. App. 66, 297 So.2d 391 (1974). Also mere confrontation with a co-defendant's confession cannot be held to be an unfair tactic or unlawfully coercive. Vander Wielen v. State,47 Ala. App. 108, 251 So.2d 240, cert. denied, 287 Ala. 742,251 So.2d 246 (1971).
We have carefully searched the record for errors injuriously affecting the substantial rights of the appellant and have found none. Therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
All Judges concur.